

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| MICK J. DUBEA, | § | |
| *Plaintiff,* | § § § | |
| v. | § | CIVIL ACTION NO. 9:07-CV-63-TH |
| JOHN C. SIMPSON, | § § § | JURY |
| *Defendant.* | § | |

# MEMORANDUM ON THE COURT'S PERSONAL JURISDICTION OVER DEFENDANT

In an order dated November 6, 2007 this Court denied Defendant's *Motion to Dismiss for Lack of Personal Jurisdiction and Incorporated Memorandum in Support* [Clerk's Docket No. 8]. This memorandum opinion details the Court's reasons for doing so.

## I. INTRODUCTION

This is a contract dispute between plaintiff Mick Dubea ("Dubea") and defendant John Simpson ("Simpson") grounded upon this Court's diversity jurisdiction. Simpson moved the Court to dismiss the action pursuant to Rule 12(b)(2) of the FEDERAL RULES OF CIVIL PROCEDURE on the ground that the Court lacks personal jurisdiction over him, a resident of the State of Louisiana. Simpson specifically contends that sufficient minimum contacts with the State of Texas are lacking and that this Court's exercise of jurisdiction over him would violate due process.

## II. FACTUAL & PROCEDURAL BACKGROUND

Mick Dubea and John Simpson worked for a power line contractor called Red Simpson, Inc. ("RSI"). Dubea was the President of RSI's Western Division and a minority stockholder. He worked for the company in Texas, and is a Texas resident. John Simpson was RSI's CEO, as well as its principal stockholder. Simpson is a Louisiana resident.

In 2004, RSI's management began negotiating the sale of the company to Pike Electric, Inc. ("Pike"). At that time, RSI owed Mick Dubea several million dollars in vested deferred compensation. Dubea was entitled to receive this amount in cash if RSI were sold. But, Pike was reluctant to purchase RSI unless Dubea further delayed this payment. To address its concerns, Pike suggested that Dubea sign a two-year employment agreement that would further defer his vested compensation. The employment agreement provided that Dubea would continue working in Texas as Vice President of the company's western region. It committed Dubea to this position for two years, to assist with the ownership transition. But, the employment agreement also provided that Dubea would forfeit a certain portion of the deferred compensation that he was owed if he left his employment with Pike before the end of that period.

Dubea was hesitant to agree to these terms. He was concerned that he might not like working for the new owners of the company–and concerned that he could forfeit his vested deferred compensation. At the same time, John Simpson was concerned that Dubea's reluctance to agree to these conditions would hold up the sale of RSI to Pike.

So, to alleviate Dubea's concerns, and to facilitate the sale of RSI to Pike, Dubea and Simpson entered into a letter agreement on July 1, 2004 (the "Letter Agreement"). It provided that Simpson would personally reimburse Dubea for half of any amount of deferred compensation that he forfeited

to Pike–but only under certain circumstances. For example, Simpson had no duty to reimburse Dubea for payments forfeited if Pike terminated Dubea *for cause*. The parties agree on this point. However, the parties do not agree about what circumstances *would* trigger Simpson's reimbursement duty. Simpson claims that the Letter Agreement obligated him to reimburse Dubea for forfeited compensation only *if Dubea voluntarily quit his job with Pike*. On the other hand, Dubea claims that the Letter Agreement obligated Simpson to reimburse him if Dubea voluntarily quit his job *or if Pike terminated Dubea without cause*.

With the Letter Agreement in place, Dubea, Simpson and RSI's one other shareholder sold all of their stock to Pike on July 1, 2004. Then, about a year later, Pike fired Dubea *without cause*. For this reason, Dubea claims that any forfeiture of deferred compensation is covered by the Letter Agreement; while Simpson claims that it is not.

Shortly after this termination, Pike sued Dubea for violating the non-compete provision of his employment agreement. One of the remedies sought by Pike was Mick Dubea's forfeiture of his deferred compensation. In hopes of settling the lawsuit, Pike and Mick Dubea scheduled a mediation in August 2006. Just before this mediation, on August 25th, Dubea contacted Simpson to discuss the status and coverage of their Letter Agreement.

The parties disagree about the content of their August 25th discussion. Dubea claims that Simpson made additional representations to reimburse him for any forfeitures he suffered as a result of the Pike litigation. For this reason, Dubea argues that the August 25th conversation amounts to an oral modification of the original Letter Agreement. For his part, Simpson claims he refused to agree to pay Dubea for any losses Dubea incurred as a result of the Pike lawsuit, and never agreed to any new obligations.

3

At any rate, Dubea and Pike settled their lawsuit. Under the terms of the settlement, Dubea agreed to give up some restricted shares of Pike stock and to forfeit $4.2 million of his vested deferred compensation. Dubea then requested that Simpson reimburse him for half this amount (i.e. $2.1 million). Simpson refused. For this reason, Dubea filed suit against Simpson for breach of his contractual obligations.

However, Simpson argues that the foregoing events are insufficient to establish minimum contacts with the State of Texas. As such, he moves the Court to dismiss the action on the ground that the Court lacks personal jurisdiction over him, a resident of the State of Louisiana. But, for the reasons that follow, the Court finds that Simpson does have sufficient minimum contacts with the State of Texas, and that the exercise of jurisdiction over him would not violate due process.

### III. LEGAL PRINCIPLES

A district court determines whether it has personal jurisdiction over a non-resident defendant, through a two-step analysis. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction. *Id.* Second, the Court must consider whether the exercise of jurisdiction is consistent with due process under the Fourteenth Amendment of the Constitution. *Id.* The Texas long-arm statute has been interpreted to extend to the limits of due process. *Command-Aire Corp. v. Ontario Mech. Sales and Serv., Inc.*, 963 F.2d 90, 93 (5th Cir. 1992); *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-17.045 (Vernon 2008). Therefore, the question for this Court is whether the exercise of jurisdiction comports with due process. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *see Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993) (noting that because the Texas Long-Arm statute reaches as far as constitutionally permitted, the personal jurisdiction inquiry collapses into one of due process only).

4

Due process requires that a nonresident defendant must have purposefully established "minimum contacts" with the forum state. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112-13, 107 S.Ct. 1026, 1032 (1987). Minimum contacts can be established in one of two ways: "either through contacts sufficient to assert specific jurisdiction or contacts sufficient to assert general jurisdiction." *Alpine View Co. Ltd v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). General jurisdiction may be found when the claim is unrelated to the nonresident defendant's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Specific jurisdiction exists where the plaintiff alleges a cause of action that is related to, or arises from, a contact between the defendant and the forum state. *Id.* at 414 n. 8. In order for a court to exercise specific jurisdiction: (1) the foreign defendant must purposely direct his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and (2) the cause of action must arise from, or be connected with, such activities, *Helicopteros Nacionales*, 466 U.S. at 414. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). "The operative consideration is that the defendant's contacts with the forum state were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Polythane Sys.*, 993 F.2d at 1205 n. 5 (full citation omitted). Further, the Court should consider the totality of the circumstances in assessing whether personal jurisdiction comports with due process. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

If the court finds that the requisite minimum contacts exist, due process further requires that the court decide whether the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co.,* 480 U.S. at 113; *Command-Aire Corp.*, 963 F.2d at 94. To make this determination, the court is required to balance five factors: (1) the burden on the nonresident defendant, (2) the interests of the forum state, (3) the plaintiff's interest in securing relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several States in furthering fundamental substantive social policies. *Asahi*

5

*Metal Indus. Co.*, 480 U.S. at 113; *Cent. Freight Lines, Inc.*, 322 F.3d at 385.  Still, once minimum contacts are established, a defendant must make "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of jurisdiction. *Gundle Lining Constr. v. Adams City Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir. 1996); *see Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). But, in determining whether a prima facie case exists, this Court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).

**IV. ANALYSIS**

A. <u>Specific Jurisdiction</u>

In the case *sub judice*, Dubea does not allege that the Court can exercise general jurisdiction over Simpson.  So, the question presented to the Court is simply whether Simpson's Texas contacts are sufficient to confer specific jurisdiction.   For, the reasons that follow, the Court finds that they do.

It is undisputed that Simpson entered into the Letter Agreement with Dubea, a Texas resident. And, regarding interstate contractual obligations, the Supreme Court has recognized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulations and sanctions for the consequences of their activities.'" *Burger King*, 105 S. Ct. At 2182 (quoting *Travelers Health Ass'n v. Virginia*, 70 S. Ct. 927, 929 (1950)).  However, a court cannot exercise specific personal jurisdiction over a nonresident defendant simply because the defendant entered into a contract with a plaintiff who resides in the forum.  *See Fruedensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *Electrosource Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872

6

(5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Rather, to determine whether such contracting establishes minimum contacts, courts must consider certain factors, including:

> [W]hether the nonresident defendant solicited the contract in the forum state; where the contract was negotiated; where the contract was executed; the contract terms, including any forum-selection and choice of law clauses; whether the contract called for a long-term relationship between a forum resident and a nonresident defendant; and the place of performance.

*Command-Aire Corp. v. Ontario Mech. Sales and Serv., Inc.*, 963 F.2d 90, 93 (5th Cir. 1992)

The Court first acknowledges that the Letter Agreement was in large part negotiated in Louisiana, and was drafted and executed by Mr. Simpson in Louisiana. These factors count against a determination that specific jurisdiction exists. But, that finding is by no means the end of the analysis.

The Court next considers where the contract was to be performed. *See Command-Aire*, 963 F.2d at 94. The Fifth Circuit regards this as "a weighty consideration." *Id.; see Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061 (5th Cir. 1992); *Pilgrim's Pride Corp. v. ASFI, Inc.*, 2006 U.S. Dist. LEXIS 19082 (E.D. Tex. 2006) (Davis, J.). In fact, when considering personal jurisdiction based on a contract, the Fifth Circuit has reasoned that, "in determining whether the statutory requirements for jurisdiction have been met, the place or time of execution, the consummation or delivery is irrelevant–*performance*, contemplated or accomplished, is the touchstone." *Prod. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 495 (5th Cir. 1974), *cert denied*, 451 U.S. 910, 101 S. Ct. 1981, 68 L. Ed. 2d 299 (1981) (quoting *Benjamin v. W. Boat Bldg. Corp.*, 472 F.2d 723, 726 (5th Cir. 1973) (emphasis added). Further, "it does not matter which party is to perform in Texas so long as some performance is to occur there." *Cousteau*, 495 F.2d at 495 (citing *Clark Adver. Agency, Inc. v. Tice*, 331 F. Supp. 1058, 1060 (N.D. Tex. 1971)).[1]

---

[1] If a resident plaintiff's decision to perform his contractual obligations within his home forum is totally unilateral, that contact with the forum state cannot be considered purposeful contact by the defendant–"and the weight is necessarily diminished." *Command-Aire*, 963 F.2d at 94 (citing

In this case, the Letter Agreement was entirely dependent on Dubea's contiuning employment with Pike for a two-year period. It was understood that Dubea's position with Pike was "Vice President, Western Region," which made him responsible for Pike's operations in Texas. In other words, part of the performance required of Dubea by the Letter Agreement was that Dubea work for Pike in Texas. The other element of Dubea's performance, was that he agree to defer payment of his vested compensation. This deferment also occurred in Texas. Simpson was well-aware of these facts at the time he signed the Letter Agreement. As for Simpson, the performance that the Letter Agreement required of him was payment of money to Dubea. Simpson would send this payment from Louisiana. However, the event that would trigger this performance was Dubea leaving Pike's employ in Texas. Considering the totality of the circumstances, the Court finds that the performance factor weighs in favor of specific jurisdiction.

Additionally, the Letter Agreement provided for an ongoing relationship between Dubea and Simpson. Their obligations under the agreement were to last for two years. And, while the Letter Agreement required just one act of performance from Simpson, (payment to Dubea in Texas), it contemplated that this performance could occur at any time within a two-year period. As such, it is clear from the Letter Agreement that Simpson and Dubea intended to create an ongoing relationship of mutual obligation. This factor also supports a finding of specific jurisdiction in Texas.

Therefore, aggregating Simpson's contacts with Texas, and considering the relevant factors, it is clear that Simpson's connections "were deliberate rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable." *Polythane Sys.*, 993 F.2d at 1206 (quoting *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 643 (5th Cir. 1980) (quoting *Cousteau*, 495 F.2d at 496). As such, the Court finds that Dubea has made a prima facie case for

---

*Miss. Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003 (5th Cir. 1982); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993). However, as herein discussed, the selection of Texas as the place for Dubea's performance was not a unilateral decision.

jurisdiction.

B. <u>Traditional Notions of Fair Play & Substantial Justice</u>

Having found that Simpson has sufficient minimum contacts with the State of Texas, Simpson now has the burden to make a 'compelling case' that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Wien Aire Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999); *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 477). However, Simpson does not address this consideration in his motion or reply. As such, he does not even lift–much less carry–his burden.

Nevertheless, having considered the relevant factors, the Court concludes that exercising jurisdiction over Simpson is consistent with traditional notions of fair play and substantial justice. As stated above, those factors are: (1) the burden on the foreign defendant, (2) the interests of the forum state, (3) the plaintiff's interest in securing relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several States in furthering fundamental substantive social policies. *Asahi Metal Indus. Co.*, 480 U.S. at 113; *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

The Court first finds that it would not be a "substantial and unreasonable" burden for Simpson to litigate this dispute in Texas. Mr. Simpson's primary domicile is in New Orleans. However, he maintains residences in other cities, including Alexandria, Louisiana, which is approximately 160 miles from Lufkin, Texas. This Court is particularly qualified to assess this burden, given that the undersigned (who sits in Beaumont, Texas) will travel approximately 110 miles to Lufkin for trial. This judge finds that distance quite manageable–and believes that adding fifty (or even 200) miles more would not make the trip substantially or unreasonably burdensome. Further, Simpson has hired counsel who are licensed in Texas, and who are able to defend this case in Texas without any undue burden.

9

As to the interests of the forum state, the Court finds that Texas has just as much interest in the resolution of the dispute as does Louisiana. Texas certainly has a legitimate interest in providing an effective means of redress for Simpson's (allegedly wrongful) failure to pay Dubea under the terms of the Letter Agreement. *Polythane Sys.*, 993 F.2d at 1206. (citing *McGee v Int'l Life Ins. Co.*, 355 U.S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)). Further, Dubea has an obvious interest in securing relief (in the form of a substantial payment). *Id.* All remaining factors appear to be neutral.

Therefore, considering the relevant factors and the totality of the circumstances, Simpson has failed to persuade this Court that litigating this case in Texas would offend the notions of fair play or substantial justice.

## V. CONCLUSION

In conclusion, having considered the motion, the responsive briefs, the record and the applicable law, the Court **FINDS** that Simpson has sufficient minimum contacts with Texas to support specific jurisdiction. On the same basis, the Court **FINDS** that extending such jurisdiction does not offend traditional notions of fair play and substantial justice. Therefore, this Court's exercise of jurisdiction over Simpson satisfies the requirements of due process. Accordingly, Simpson's motion to dismiss should be denied.

**SIGNED** this the 2 day of **March, 2009.**

_____
Thad Heartfield
United States District Judge